**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

In re:

Diane C. Spreadbury,                        Case No. 08-14288-BFK

                    Debtor.                  Chapter 11

**AMENDED DISCLOSURE STATEMENT REGARDING**
**AMENDED PLAN OF LIQUIDATION FOR DIANE C. SPREADBURY**

The Chapter 11 Trustee (the "Trustee") for Diane C. Spreadbury ("the "Debtor") has prepared this Amended Disclosure Statement (the "Amended Disclosure Statement") in connection with his solicitation of acceptances of his proposed Amended Plan of Liquidation (the "Amended Plan") filed with the United States Bankruptcy Court for the Eastern District of Virginia, Alexandria Division (the "Court"), in the case filed under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §101 *et seq*. (the "Code"). The Plan defines many terms that are used in the Amended Disclosure Statement. These terms are capitalized in the Amended Disclosure Statement and Plan.

## I.      INTRODUCTION

Pursuant to § 1125 of the Bankruptcy Code, this Amended Disclosure Statement must contain "adequate information" to permit creditors to make a reasonably informed judgment as to whether to vote for the Amended Plan. Conditional and final approval of the Amended Disclosure Statement by the Court does not constitute an endorsement by the Court of the Amended Plan or a guaranty of the accuracy of the information provided. A copy of the Order approving the Amended Disclosure Statement is being transmitted with this Amended Disclosure Statement. The Order, the Amended Disclosure Statement and the enclosed Ballot set forth important deadlines, procedures and instructions for casting votes to accept or reject the Amended Plan and for filing objections to confirmation of the Amended Plan. All creditors are urged to read the Amended Disclosure Statement carefully in order to formulate an informed opinion as to the manner in which the Amended Plan affects their Claim. This Amended Disclosure Statement contains only a summary of the Amended Plan, and it is recommended that all creditors and other parties in interest review the Amended Plan itself, which has been filed with the Court, in detail.

### A.      Holders Of Claims Entitled To Vote.

Under applicable provisions of the Bankruptcy Code, the only parties entitled to vote to accept or reject a proposed chapter 11 plan are holders of allowed claims and equity interests in classes of claims or equity interests that are "impaired" and that are not deemed to have rejected the Plan. A class of claims or equity interests is deemed to have rejected a chapter 11 plan and is not entitled to vote to accept or reject such plan where the holders of claims or equity interests in that class will receive no recovery under the plan. Similarly, a class of claims or equity interests

John F. McGinley Jr., Esq. (VSB #17354)
McGinley, Elsberg & Hutcheson, PLC
627 S. Washington Street
Alexandria, VA 22314
571-970-5426 (tel)
571-970-6333 (fax)
jmacjrlaw@aol.com
Chapter 11 Trustee

is deemed to have accepted a chapter 11 plan and is not entitled to vote to accept or reject such plan where the holders of claims or equity interests in that class are unimpaired under the plan. For a detailed description of the treatment of Claims under the Amended Plan, see Section VI of this Amended Disclosure Statement.

Classes 1 and 2 are unimpaired classes. The holders of Allowed Claims in Classes 1 and 2 are deemed to accept the Plan and, accordingly, are not entitled to vote to accept or reject the Plan. The Chapter 11 Trustee believes that there are no Priority Claims and therefore estimates that Class 1 Priority Claims total $-0-; and Class 2 Secured Claims total $3,306,000.

Class 3 of the Plan is an impaired class. Holders of Allowed Claims in Class 3 will receive distributions under the Plan and are entitled to vote to accept or reject the Plan. The Chapter 11 Trustee estimates that Class 3 Claims total the $690,939.58 in filed claims, as well as one half of the attorney fee award from the Adversary Proceeding or $208,126.25 (a levy has been served on the Chapter 11 Trustee presumably attaching to Mr. Spreadbury's proceeds), and the claims of Peter Spreadbury as a result of the parties' divorce in the amount of $282,825.00, for a total of $1,181,890.83.

The Bankruptcy Code provides that a class of claims has "accepted" a plan if the plan has been accepted by creditors in that class that hold at least 2/3 in dollar amount and more than 1/2 in number of the allowed claims that actually cast ballots to accept or reject the plan. For a more detailed description of the requirements for confirmation of the Plan, and of "impaired Claims", see Section VII of this Amended Disclosure Statement.

### B.      Voting Procedures.

If you are entitled to vote to accept or reject the Amended Plan, a Ballot is enclosed for the purpose of voting on the Amended Plan. Please vote and return your Ballot(s) either by mail or by fax to:

> John F. McGinley Jr.
> McGinley, Elsberg & Hutcheson, P.L.C.
> 627 South Washington Street
> Alexandria, VA 22314
> Fax: 571.970.6333

**DO NOT RETURN ANY NOTES OR SECURITIES WITH YOUR BALLOT.**

**TO BE COUNTED, YOUR BALLOT INDICATING ACCEPTANCE OR REJECTION OF THE AMENDED PLAN MUST BE *RECEIVED* BY NO LATER THAN**

**_____, 2011**

If you are a holder of a Claim entitled to vote on the Amended Plan and did not receive a Ballot, received a damaged Ballot or lost your Ballot, or if you have any questions concerning the Amended Disclosure Statement, the Amended Plan or the procedures for voting on the Amended Plan, please contact the Chapter 11 Trustee at the address or telephone number below:

John F. McGinley Jr.
McGinley, Elsberg & Hutcheson, P.L.C.
627 South Washington Street
Alexandria, VA 22314
Phone (571) 970-5426
Fax    (571) 970-6333

**C.    Confirmation Hearing.**

Pursuant to § 1128 of the Bankruptcy Code, the Confirmation Hearing will be held on
_____, 2011, commencing at 11:00 a.m., prevailing Eastern Time, before the
Honorable Brian F. Kenney, Bankruptcy Judge, United States Bankruptcy Court for the Eastern
District of Virginia, Alexandria Division, Courtroom I, 200 South Washington Street,
Alexandria, Virginia 22314. The Bankruptcy Court has directed that objections, if any, to
confirmation of the Amended Plan be served and filed so that they are received by no later than
_____, 2011, in the manner described below in Section VII.B. of this Amended
Disclosure Statement. The Confirmation Hearing may be adjourned from time to time by the
Bankruptcy Court without further notice except for the announcement of the adjournment date
made at the Confirmation Hearing or at any subsequent adjourned Confirmation Hearing.

**ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ARE ADVISED AND
ENCOURAGED TO READ THIS AMENDED DISCLOSURE STATEMENT AND THE
AMENDED PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE
AMENDED PLAN.**

**THE STATEMENTS CONTAINED IN THIS AMENDED DISCLOSURE STATEMENT
ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN,
AND THE DELIVERY OF THIS AMENDED DISCLOSURE STATEMENT SHALL NOT
CREATE AN IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE
INFORMATION STATED SINCE THE DATE HEREOF.**

**FOR THE CONVENIENCE OF THE HOLDERS OF CLAIMS , THIS AMENDED
DISCLOSURE STATEMENT SUMMARIZES THE TERMS OF THE PLAN, BUT THE PLAN
ITSELF QUALIFIES ALL SUMMARIES. IF ANY INCONSISTENCY EXISTS BETWEEN THE
AMENDED PLAN AND THE AMENDED DISCLOSURE STATEMENT, THE TERMS OF THE
PLAN ARE CONTROLLING. THE AMENDED DISCLOSURE STATEMENT MAY NOT BE
RELIED ON FOR ANY PURPOSE, OTHER THAN TO DETERMINE WHETHER TO VOTE
TO ACCEPT OR REJECT THE AMENDED PLAN, AND NOTHING STATED HEREIN SHALL
CONSTITUTE AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE
ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY,
OR BE DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF
THE PLAN ON THE DEBTOR OR HOLDERS OF CLAIMS OR EQUITY INTERESTS.
CERTAIN OF THE STATEMENTS CONTAINED IN THIS AMENDED DISCLOSURE
STATEMENT, BY NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND
ASSUMPTIONS. THERE CAN BE NO ASSURANCES THAT SUCH STATEMENTS WILL BE
REFLECTIVE OF ACTUAL OUTCOMES. ALL HOLDERS OF CLAIMS SHOULD**

**CAREFULLY READ AND CONSIDER FULLY THE RISKS DESCRIBED IN THIS AMENDED DISCLOSURE STATEMENT.**

**ANY FINANCIAL INFORMATION CONTAINED IN THIS AMENDED DISCLOSURE STATEMENT HAS NOT BEEN SUBJECT TO AN AUDIT. THE DEBTOR'S RECORDS, UPON WHICH THE AMENDED DISCLOSURE STATEMENT IS BASED, ARE NOT WARRANTED OR REPRESENTED TO BE WITHOUT INACCURACY, ALTHOUGH CONSIDERABLE EFFORT HAS BEEN MADE TO BE ACCURATE. THE CHAPTER 11 TRUSTEE BELIEVES THAT THE INFORMATION CONTAINED IN THIS AMENDED DISCLOSURE STATEMENT IS ACCURATE AND COMPLETE IN ALL MATERIAL RESPECTS.**

**NO REPRESENTATION OR INDUCEMENT OUTSIDE OF THIS AMENDED DISCLOSURE STATEMENT MADE IN CONNECTION WITH THE SOLICITATION OF VOTES ON THE AMENDED PLAN IS AUTHORIZED BY THE CHAPTER 11 TRUSTEE AND SHOULD NOT BE RELIED UPON AS HAVING BEEN MADE BY THE CHAPTER 11 TRUSTEE. IF AN UNAUTHORIZED REPRESENTATION IS MADE TO SOLICIT VOTES ON THE AMENDED PLAN, IT SHOULD BE REPORTED IN WRITING TO THE CHAPTER 11 TRUSTEE.**

**THIS AMENDED DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH § 1125 OF THE CODE AND RULE 3016(c) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW. THIS AMENDED DISCLOSURE STATEMENT HAS NEITHER BEEN APPROVED NOR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION, NOR HAS THE SECURITIES AND EXCHANGE COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.**

**THE ABSENCE OF PENDING OBJECTIONS TO CLAIMS OR PENDING AVOIDANCE ACTIONS OR THE ABSENCE OF AN INDICATION HEREIN OF POTENTIAL OBJECTIONS TO CLAIMS OR AVOIDANCE ACTIONS SHALL NOT SERVE AS A WAIVER OF SUCH RIGHTS, AND ALL CREDITORS AND PARTIES-IN-INTEREST ARE EXPRESSLY ON NOTICE THAT THEY MAY NOT RELY ON THIS AMENDED DISCLOSURE STATEMENT OR ABSENCE OF NOTICE OF AN OBJECTION TO CLAIM OR POSSIBLE AVOIDANCE ACTION UNDER CHAPTER 5 OF THE BANKRUPTCY CODE (INCLUDING CAUSES OF ACTION UNDER §§ 544, 545, 547, 548, 549, 550 and/or 553 OF THE BANKRUPTCY CODE) AS A DEFENSE TO SUCH FUTURE OBJECTION OR ACTION.**

**THE CHAPTER 11 TRUSTEE BELIEVES THAT THE PLAN WILL ENABLE HIM TO SUCCESSFULLY LIQUIDATE THE DEBTOR'S ASSETS AND ACCOMPLISH THE OBJECTIVES OF CHAPTER 11 AND THAT ACCEPTANCE OF THE AMENDED PLAN IS IN THE BEST INTERESTS OF THE CREDITORS AND ALL PARTIES IN INTEREST.**

## II.   OVERVIEW OF PLAN

The Allowed Amount of each Allowed Administrative Expense shall be paid in full and in cash, as soon as practicable after the Effective Date or as soon as practicable after a later date on which an Allowed Amount for such Allowed Administrative Expense is determined. The bar date for seeking the allowance of Administrative Expenses, other than compensation of professionals under §§ 330 and 331 of the Bankruptcy Code, shall be the 30th day following the Confirmation Date. The bar date for seeking the allowance of Administrative Expenses under §§ 330 and 331 of the Bankruptcy Code shall be the 60th day following the Effective Date. The

failure to seek the allowance of Administrative Expenses by the applicable bar date shall constitute a waiver of such Administrative Expense.

On the Effective Date or as soon as practicable thereafter, each holder of an Allowed Class 1 Priority Claim shall be paid in cash the Allowed Amount of such holder's Allowed Priority Claim.  Class 1 is unimpaired with respect to each holder.  The holders of the Claims in Class 1 are deemed to accept the Plan and, accordingly, are not entitled to vote to accept or reject the Plan. There are no known Priority Claims.

On the later of the Effective Date and the date on which a Secured Claim becomes Allowed, each holder of an Allowed Secured Claim shall be paid in cash, the Allowed Amount of such holder's Allowed Secured Claim.  Note that since both Class 2 Claims are secured to jointly owned real property, it will be necessary to pay these claims in full at closing of a sale of the secured property. Class 2 is unimpaired with respect to each holder.  The holders of the Claims in Class 2 are deemed to accept the Plan and, accordingly, are not entitled to vote to accept or reject the Plan.

Provided that the face amount of all Administrative Expenses, Priority Claims, and Secured Claims have been paid in full or, to the extent not paid in full, funds sufficient to satisfy the face amount of all such Claims have been placed in a segregated reserve, and subject to the occurrence of the Effective Date, on, or as soon as reasonably practicable after, the Initial Distribution Date, the holder of an Allowed Unsecured Claim shall receive the Pro Rata share of the Initial Class 3 Distribution Amount attributable to such Claim.  On each subsequent Distribution Date, if any, each holder of an Allowed Unsecured Claim shall receive the Pro Rata share of the Periodic Class 3 Distribution Amount attributable to such Claim.  The proposed treatment described in this section of the Plan shall be in full and final satisfaction, settlement, and release of and in exchange for such Allowed Unsecured Claim.  To the extent a Claim is not Allowed after either the Initial Distribution Date, or the Periodic Distribution Date if any, as the case may be, a "catch up" payment shall be made as provided in Section 5.3 of the Plan. Class 3 is impaired. The holders of Class 3 claims are entitled to vote to accept or reject the Plan.

The Confirmation Order shall constitute an order under Bankruptcy Code § 365 rejecting all executory contracts and unexpired leases to which the Debtor is a party.  Any claim arising from the rejection of an executory contract or unexpired lease must be filed with the Bankruptcy Court within 30 days after the Confirmation Order is entered.  Any claim arising from the rejection of an unexpired lease or executory contract shall, to the extent Allowed, be classified in Class 3 as a General Unsecured Claim. The Debtor does not receive a discharge upon entry of the Confirmation Order. The debtor only receives a discharge when granted by the Court on completion of the Plan and other conditions set by the Court.

## III.    GENERAL INFORMATION

### A.    Overview of Chapter 11.

The commencement of a Chapter 11 case creates an estate that is comprised of all of the legal and equitable interests of the debtor as of the commencement date.

The principal objective in a Chapter 11 reorganization case is to confirm and consummate a plan with either a reorganization plan or a liquidation plan.  The plan typically sets forth the means for resolving and satisfying claims against and equity interests in the debtor. Chapter 11 promotes equality of treatment for similarly situated creditors and similarly situated equity interest holders with respect to the distribution of a debtor's assets.

Confirmation of the plan by the bankruptcy court binds the debtor and any creditor or equity interest holder of a debtor. Subject to certain limited exceptions, the order approving confirmation of a plan discharges a debtor from any debt that arose prior to the date of confirmation of a plan and substitutes in their place the obligations specified under the confirmed plan.

### B.      Description And History Of Debtor And Her Business To The Present Date.

### 1.      Overview Of The Debtor

Diane C. Spreadbury is an individual who owned, along with her ex-spouse Peter Spreadbury, a one hundred tract of ground located on Atoka Road in Middleburg, Virginia, as well as two separate 3.5 acre parcels of ground (the Outlots) located adjacent to the 100 acre parcel (collectively, the "Properties"). From approximately January 1, 2004, to August 1, 2009, the Debtor operated a significant real estate rental business on these properties as a sole proprietor. The Debtor also is the owner, along with her ex-spouse Peter Spreadbury, of a significant quantity of personal property which was located on the premises of the Properties.

In June 2009, the Court appointed a Chapter 11 Trustee in this case, and the Trustee has overseen the operation of the rentals since qualification on or about August 1, 2009. Pursuant to an agreement beween the Debtor's Chapter 11 Trustee, the Co-Owner, and The Spreadbury Children, the income from those rentals have been the property of the Bankruptcy Estate and have been exclusively dedicated to payment of the mortgage and other operating expenses of the Properties since December 1, 2009. The Debtor has filed all required tax returns and paid all taxes assessed since the 2008 filing of this case.

The normal primary use of the Properties was and is as a thorobred horse farm. The breeding, raising, sale and competition of show horses and jumping horses is considered by most horse owners to be both vocation and avocation, and is typically passionately pursued. The Properties are situated in the State of Virginia in what is considered within the show horse/jumping horse industry to be a prime location. In a normal real estate market, the Properties would be highly sought after.

On August 4 and 5, 2011, the sale of the Properties was closed pursuant to the terms of a contract for sale dated June 23, 2011, which sale was confirmed by this Court on July 21, 2011. The gross sale price of the Properties was $4,500,000. After payment of the expenses of sale and the mortgage lien recorded against the property in a higher than expected amount of $1,113,925.76, (versus the expected $1,060,000), the net proceeds from the sale totaled $3,153,976.79. A Report of Sale was filed by the Chapter 11 Trustee with the Court. As more fully stated herein, the Chapter 11 Trustee expects that satisfaction of the estate's claim in a minimum of $51,825 against the lender Chase Bank for overcharges on the mortgage payoff will return that payoff to the expected amount.

### 2.      The Current Operations

From August 1, 2009, to August 5, 2011, there were five main residential rental units available for rent on the Properties. There are two modest rental cottages, known as the Oak Cottage and the House in the Woods respectively; two apartments known as the Barn Apartment and the Garage Apartment respectively; and a modest single family type house called the Stone Cottage or Farm Manager's House. Since October of 2010, the Main House on the Farm which is approximately 12,000 square feet in size has also been rented to co-owner Peter Spreadbury. From October 1, 2010, to June 1, 2011, the operations averaged approximately $9600 per month

in income and $9500 per month in expense.

Upon the sale of the Properties however, the monthly income and expense ceased of course. The Debtor is over 65 and receives a Social Security check in the approximate amount of $730 monthly, which income is exempt from use in this case. She also receives a minimal amount from a spendthrift trust established by her mother which has never exceeded $300 per month. There is no significant chance that her income will provide any additional amounts available to satisfy the claims of creditors in the future.

## IV.     EVENTS LEADING UP TO THE CHAPTER 11 FILING

### A.     The Divorce Action and Title To The Properties.

Prior to the Chapter 11 filing the Debtor operated the rentals on the Farm with little assistance, but with significant monetary strain. The Debtor was embroiled in divorce litigation with her ex-spouse, which would affect title to the Properties and the personal property owned by them jointly. In addition, the Debtor was aware that her adult children (the Spreadbury Children) intended to assert a claim against both the Debtor and her ex-spouse asserting their right to ownership of the Farm on the basis of breach of fiduciary duty, and had initiated actions in both Connecticut and Virginia to enforce those rights.

### B.     Pre-Petition Lawsuits By Creditors.

As of the Commencement Date, the following suits and arbitrations were pending against the Debtor:

- *Diane Spreadbury v. Peter Spreadbury,* counterclaim by Peter Spreadbury in the divorce litigation, Case No.  CH04-125; pending before the Circuit Court for Fauquier County, Virginia**.**

- *Michelle Spreadbury, et al. v. Diane Spreadbury and Peter Spreadbury,* Case No. CL08-500**;** the fiduciary litigation pending before the Circuit Court for Fauquier County, Virginia.

- *Matter of Spreadbury,* Trust No.  T-1082, Probate Court of Connecticut, District of Westport, Connecticut.

## V.     THE REORGANIZATION CASE

### A.     Commencement of the Chapter 11 Case.

The Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code on July 21, 2008, (the "Commencement Date") in the above-captioned court.  The Debtor filed a petition under chapter 11 instead of chapter 7 because the Debtor believed that she would be able to either (i) reorganize, refinance and recommence her rental operations around its most valuable assets, the Properties, thereby preserving her interest and the interests of her adult children in the 100 acre Farm or (ii) sell the valuable assets to a third party at arms length and negotiated terms providing for their highest and best return on assets and the satisfaction of her debts.

B.    **Administration Of The Chapter 11 Case.**

1.    **Post-petition Operations.**

As noted above, the Debtor filed her Chapter 11 petition as a Debtor precluded from filing under Chapter 13 with in excess of $336,900 in unsecured debt or $1,010,650 in secured debt (§ 109(e)) but also was engaged in real estate rental operations both before and after filing her petition on July 21, 2008. Despite the fact that the Properties generate sufficient rental income to have justified operations over the past three years, the Chapter 11 Trustee has determined that rising costs of insuring the Properties as well as maintenance costs, together with the inability to generate substantial profit over the debt service sufficient to retire the outstanding total indebtedness claimed, now requires that the assets be liquidated in an orderly fashion and that this Disclosure Statement and Liquidation Plan be filed.

2.    **Bar Date For Filing Claims.**

November 26, 2008 was established as the bar date for the filing of proof of claims in this Chapter 11 Case.  Notice of the Bar Date was served on all creditors and parties in interest. Thus, by the date of the entry of the Stipulation on January 29, 2009, on behalf of Mr. Spreadbury, the total number and amount of unsecured claims at that time was known to be $690,939.58, but did not include any administrative expenses claims. The amount of unsecured claims has increased as a result of the Divorce litigation and Fiduciary Duty litigation addressed below.

3.    **Divorce Litigation During The Pendency of the Bankruptcy Case.**

A grant of relief from the stay by the Bankruptcy Court permitted the divorce case to go forward in Fauquier County, Virginia Circuit Court, provided that the Debtor was empowered to assert the rights of a Bankruptcy Trustee with regard to any property alleged to be part of the marital estate. The grant of relief from the stay had the net effect of causing Mr. Spreadbury's counsel to file the Stipulation on his behalf in that case, and the divorce proceding went forward on April 14, 2009, without further input from the Debtor or assertion of any rights of a Bankruptcy Trustee in all property asserted to be marital. A Final Decree of Divorce was entered in the case on April 16, 2009.

Subject to the Stipulation, the Final Decree of Divorce provided that, as to the Properties, which are now sold, the Debtor had a 35% interest in the 100 acre Farm and Peter Spreadbury had a 65% interest, both subject to the mortgage with the estimated balance of $1,060,000. The Debtor maintained a 50% interest in each of the two Outlots as did Peter Spreadbury, and the Outlots are unencumbered. The Court determined that the Debtor and Peter Spreadbury are each entitled to a 50% interest in the personal property owned by them. The Court further determined that, if the Debtor and Peter Spreadbury were not able to agree on how to transfer assets to satisfy the terms of the Decree, all personal property assets should be sold at auction and the proceeds divided.

4.    **Appointment of the Chapter 11 Trustee.**

On or about June 22, 2009, the U.S. Bankruptcy Court appointed a Chapter 11 Trustee to serve in this case and determine, among other issues, whether the property of the bankruptcy estate should be administered under the Bankruptcy Court. The Chapter 11 Trustee recommended to the Court that the Bankruptcy Court was the best forum to determine the rights of all persons asserting claims against any property in which the Debtor had an interest and thereafter, to administer the assets. Subsequent to resolution of the breach of fiduciary duty claims asserted by the Spreadbury Children, and the appraisal of the Properties, on June 10, 2010, the Bankruptcy Court entered an Order permitting the Chapter 11 Trustee to employ

Thomas & Talbot as broker/agents to sell the Properties subject to approval by the Court. The Properties have been marketed since that time, both as a Farm and separate Outlots, and as a single entity.

### 5.      Fiduciary Duty Adversary Proceding In The Bankruptcy Court.

The Claims of the Spreadbury Children were consolidated and filed in Adversary Proceeding No. 09-01254-SSM in the Bankrupcy Court on August 31, 2009, in lieu of further State Court proceedings. The Debtor and her former spouse, Peter Spreadbury, also the co-owner of the Properties, were found to have violated their fiduciary duties in the administration of certain trusts of which the Spreadbury Children were the beneficiaries. As a result, the Bankrupcy Court entered an Order imposing a constructive trust lien over the 100 acre Farm property in the amount of $2,256,000, and a joint and several attorney's fee award of $416,252.50, by its Order of June 25, 2010.

### 6.      Exclusivity Period.

Upon the filing of this bankruptcy case, the Debtor had until 120 days after the Petition Date to file a plan. Since the Debtor did not file a plan within the 120 day period, any party in interest, including the Chapter 11 Trustee, is authorized to file a plan.

### 7.      U.S. Trustee's  Motion to Convert.

On November 22, 2010, the U.S. Trustee filed a motion to compel the Chapter 11 Trustee to either file a Disclosure Statement and Plan in this case or to convert the case to Chapter 7 of the Bankruptcy Code. The Bankruptcy Court took the motion under advisement, during which time the Chapter 11 Trustee filed the proposed Disclosure Statement and Plan of June 30, 2011. After discussion and in light of the Court's determination that Mr. Spreadbury's claims were not subordinated to the claims of other creditors, the Chapter 11 Trustee now files this Amended Disclosure Statement and proposed Plan.

### 8.      Remaining Assets – Real Estate Proceeds.

The Debtor's remaining assets include the proceeds of her interests in the Properties. The Properties were appraised by James Ruffner in May of 2010 to and found to have a combined value of $5,600,000. The Properties were marketed for a period of one year after appraisal. During that time, the Trustee received two serious offers, one for a cash sale at $4,000,000, and one with a contingency on sale of another property, at $4,600,000. A third offer, believed not completely bona fide, was received at $3,900,000.

Therefore, the Chapter 11 Trustee determined that the state of the real estate market dictated that the property was worth approximately $4,500,000 in the present real estate market. The Chapter 11 Trustee then accepted the last offer for the Properties of $4,500,000 and recommended the contract to the Court as the highest and best offer obtainable, which the Court approved. On August 4 and 5, 2011, the sale was closed and, after sales costs and the balance of the mortgage were deducted, proceeds in the amount of $3,153,976.79 were received by the Chapter 11 Trustee.

On March 14, 2010, the Spreadbury Children, Peter Spreadbury, the Debtor, by counsel, and the Chapter 11 Trustee, entered into an agreement entitled "Spreadbury- Trustee's Marketing and Sale Term Sheet". The agreement provided that the Chapter 11 Trustee was required to propose a division of the sales proceeds from the Properties in a percentage that mirrored the

values given to each of the Farm and Outlots in the Appraisal noted above. The Trustee did so, assigning a value of $3,857,142.60 to the Farm (85.71428%), and $642,856.95 to the two Outlots (14.28571%), before mortgage and sales costs, and these values have been accepted. Sales costs totaled $227,701.45 of which $225,000 was real estate commission.

Proceeds from the Debtor's interests in the Properties (35% in Farm and 50% in Outlots) less the proportional costs of sales, will in large part fund the proposed Plan. Court approved Administrative costs will be deducted from the proceeds of all property.

### 9.      Remaining Assets – Personal Property and Bank Claim

The Chapter 11 Trustee received certain information indicating that items of personal property, in which the Debtor did not claim an interest in her Amended Schedules, was disposed of. The Chapter 11 Trustee investigated this claim, and found that these items of property either did not belong to the Debtor, were subject to claims of others, or had been properly disposed of prior to filing bankruptcy, and did not exist during the pendency of this bankruptcy case. The Chapter 11 Trustee abandoned any claim to these items of items of property on September 14, 2011. (court entry no. 251)

The Chapter 11 Trustee also inquired into the legal status of the items listed as exempt property in the Debtor's Amended Schedules. The Chapter 11 Trustee determined that no exceptions had been filed to the Debtor's claimed exemptions, and that no Domestic Support Order had been entered by the State Court in the Debtor's divorce. Accordingly, the Chapter 11 Trustee abandoned the exempt items to the Debtor on September 14, 2011. (court entry no. 250)
.

The Chapter 11 Trustee is also aware that the Debtor has commenced litigation against her divorce counsel alleging negligence/breach of contract by them. The Chapter 11 Trustee has investigated and believes that the suit will cost approximately $50,000 to $100,000 to maintain; will be ardently defended; and that the value is purely speculative. Therefore, the Chapter 11 Trustee determined that pursuit of the action would be burdensome to the estate and of an insignificant value to the estate and therefore was abandoned by the Chapter 11 Trustee on August 12, 2011. (court entry no. 243)

All remaining personal property will be sold at public auction, in keeping with the terms of the Divorce Decree. The Chapter 11 Trustee has made preliminary contact with two auction companies for this purpose and will further advise of the selection. Proceeds from the sale of this property will also fund the proposed Plan in part. Property, if any, not sold at auction may be abandoned. There will be costs of sale applicable to moving, storing and auctioning of the remaining personal property. The Chapter 11 Trustee believes that the values assigned to the personal property items on the schedules filed in this case are unrealistic, probably due to the far better economy in 2006 or 2007 when the values were assigned as a part of the divorce case. The Chapter 11 Trustee believes that sale of the personal property will result in no more than $10,000 to $50,000 in additonal proceeds to the estate. A list of personal property is part of the Amended Schedules filed as court entry no. 55.

The estate also maintains that Chase Bank overcharged the payoff of the mortgage on the property at closing. The Bank has tentatively agreed that a charge of $51,825 should not have been imposed. The Chapter 11 Trustee also contends that approximately $48,000 in other charges imposed are suspect at best. The Trustee will pursue this claim and report on the claim status.

### VI. CLAIMS

**Classification And Treatment Of Claims And Equity Interests** All Claims, except Administrative Expense Claims, are placed in Classes as set forth below.  A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and is classified in other Classes to the extent that any remainder of the Claim qualifies within the description of such other Classes.  A Claim also is classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class, and such Claim has not been disallowed, paid or released prior to the Effective Date.

### 1. Administrative Expense Claims.

Administrative Expense Claims are any Claim constituting a cost or expense of administration in the Chapter 11 Case under § 503 of the Bankruptcy Code, including, without express or implied limitation, any actual and necessary costs and expenses of preserving the Debtor's estate, any actual and necessary costs and expenses of operating the business of the Debtor, including without limitation, allowed compensation or reimbursement of expenses under § 503(b)(2)-(5) of the Bankruptcy Code, and any fees or charges assessed against the Debtor's estate under 28 U.S.C. § 1930.

(a)    The Allowed Amount of each Allowed Administrative Expense shall be paid in full and in cash, as soon as practicable after the Effective Date or as soon as practicable after a later date on which an Allowed Amount for such Allowed Administrative Expense is determined.  The bar date for seeking the allowance of Administrative Expenses, other than compensation of professionals under §§ 330 and 331 of the Bankruptcy Code, shall be the 30th day following the Confirmation Date.  The bar date for seeking the allowance of Administrative Expenses under §§ 330 and 331 of the Bankruptcy Code shall be the 60th day following the Effective Date.  The failure to seek the allowance of Administrative Expenses by the applicable bar date shall constitute a waiver of such Administrative Expense.

(b)    Objections to any Administrative Expense (other than Administrative Expenses under §§ 330 and 331 of the Bankruptcy Code) shall be filed and served within thirty (30) days after the bar date for filing of such Administrative Expense. Objections to any Administrative Expense under §§ 330 and 331 of the Bankruptcy Code shall be filed and served within twenty (20) days after the filing of such Administrative Expense.  If an objection is filed within the applicable period, the Administrative Expense shall become an Allowed Administrative Expense only to the extent allowed by a Final Order of the Bankruptcy Court.  Objections to Administrative Expenses may be filed by the Plan Administrator.

(c)    The Chapter 11 Trustee estimates that the aggregate amount of Allowed Administrative Expenses comprised of legal fees and expenses incurred by the Debtor and the the Chapter 11 Trustee from the commencement of the bankruptcy case to confirmation of the plan will total $350,000. The Debtor's attorney, and Trustee's Special Counsel, has billed a total of $ 230,000.00 (of which $ 15,000.00 is comprised of a retainer, to be applied to the amount). The Chapter 11 Trustee believes that the estate has received sufficient funds from the sale of the real property to pay these amounts. The Trustee estimates, as an estimate only, that the estate will realize approximately $450,000 from the sale of assets.

### 2. Claims and Equity Interests.

Claims and Equity Interests are classified for purposes, including, without express or implied limitation, voting, confirmation, and distribution under the Amended Plan, as follows:

| Class | Status |
|---|---|
| Class 1 – Priority Claims | Unimpaired – not entitled to vote |
| Class 2 – Secured Claims | Unimpaired – not entitled to vote |
| Class 3 – General Unsecured Claims | Impaired –entitled to vote |

The treatment of each class of Claims and Interests is described below.

### Class 1 – Priority Claims.

(a)    *Classification*: Class 1 consists of all Allowed Priority Claims. There are no known Priority Claims.

(b)    *Treatment*:    None necessary.

(c)    *Interest*:    None payable.

(d)    *Status*:    Class 1 is unimpaired with respect to each holder.  There are no holders of Priority Claims, and therefore, none in Class 1 are deemed to accept the Amended Plan and, accordingly, none are entitled to vote to accept or reject the Amended Plan.

(e)    *Estimated Amounts*:   The Trustee estimates that the Class 1 Claims total $-0-.

### Class 2 –Secured Claims.

### Class 2(a) – Secured Claim, Mortgage.

(a)    *Classification*: Class 2(a) consists of an Allowed Secured Claim for the mortgage secured to the 100 acre Farm property, and has been paid in full at closing.

(b)    *Treatment*:    On the later of the Effective Date and the date on which a Secured Claim becomes Allowed, each holder of an Allowed Secured Claim shall be paid in cash, the Allowed Amount of such holder's Allowed Secured Claim.

(c)    *Interest*:    Interest shall accrue only to the extent that payment of interest is required under § 506(b) of the Bankruptcy Code.

(d)    *Status*:    Class 2(a) is unimpaired with respect to each holder.  The holders of the Claim in Class 2(a) are deemed to accept the Plan and, accordingly, are not entitled to vote to accept or reject the Amended Plan.

(e)    *Estimated Amounts*:   The Chapter 11 Trustee estimates that the Class 2(a) Claim totals $1,060,000.

**Class 2(b) – Secured Claim, Constructive Trust.**

(a)     *Classification*:        Class 2(b) consists of an Allowed Secured Claim for the money judgment and constructive trust placed upon the Farm property by the Bankruptcy Court.

(b)     *Treatment*:     The Class 2(b) Claim is subject to an agreed carve-out in the amount of $350,000 to satisfy Administrative Expense claims. On the later of the Effective Date and the date on which a Class 2(b) Secured Claim becomes Allowed, the holders of an Allowed Class 2(b) Secured Claim shall be paid in cash, the Allowed Amount of such holder's Allowed Secured Claim.

(c)     *Interest*:        Interest shall accrue only to the extent that payment of interest is required under § 506(b) of the Bankruptcy Code.

(d)     *Status*:        Class 2 is unimpaired with respect to each holder.  The holders of the Claim in Class 2(b) are deemed to accept the Plan and, accordingly, are not entitled to vote to accept or reject the Amended Plan.

(e)     *Estimated Amounts*:    The Chapter 11 Trustee estimates that the Class 2(b) Claim totals $2,256,000.

**Class 3 –General Unsecured Claims.**

(a)     *Classification*:        Class 3 consists of all Allowed Unsecured Claims.

(b)     *Treatment*:     Provided that the face amount of all Administrative Expenses, Priority Claims, and Secured Claims have been paid in full or, to the extent not paid in full, funds sufficient to satisfy the face amount of all such Claims have been placed in a segregated reserve, and subject to the occurrence of the Effective Date, on, or as soon as reasonably practicable after, the Initial Distribution Date, the holder of an Allowed Unsecured Claim shall receive from the Plan Administrator the Pro Rata share of the Initial Periodic Class 3 Distribution Amount attributable to such Claim.  On each subsequent Distribution Date, each holder of an Allowed Unsecured Claim shall receive the Pro Rata share of the Periodic Class 3 Distribution Amount attributable to such Claim.  The proposed treatment described in this section of the Plan shall be in full and final satisfaction, settlement, and release of and in exchange for such Allowed Unsecured Claim.  To the extent a Claim is not Allowed until after either the Initial Distribution Date, or the Periodic Distribution Date, as the case may be, a "catch up" payment shall be made as provided in section 5.3 of the Plan.

(c)     *Interest*:        Interest shall neither accrue nor be payable with respect to Allowed Unsecured Claims.

(d)     *Status*:        Class 3 is impaired. The holders of the Claims in Class 3 are entitled to vote to accept or reject the Amended Plan.

(e)     *Estimated Amounts:*   The Chapter 11 Trustee estimates the Class 3 Claims total $1,181,890.83.

(f)      *Estimated Distribution:*      The Chapter 11 Trustee estimates that Allowed Class 3 Creditors will receive 3% of their Allowed Claim.

## A.      Treatment Of Executory Contracts And Unexpired Leases

The Confirmation Order shall constitute an order under Bankruptcy Code § 365 rejecting all executory contracts and unexpired leases to which the Debtor is a party.  Any claim arising from the rejection of an executory contract or unexpired lease must be filed with the Bankruptcy Court within 30 days after the Confirmation Order is entered.  Any claim arising from the rejection of an unexpired lease or executory contract shall, to the extent Allowed, be classified in Class 3 as a General Unsecured Claim.

## B.      Provisions For Treatment Of Disputed Claims

The Plan Administrator may object to the allowance of Claims. The only known objection that may be made is to the claim of Mr. Paul Morrison, Esq., in the amount of $10,000. All objections that are filed are prosecuted as provided herein shall be litigated to Final Order or compromised and settled, unless otherwise provided herein or ordered by the Bankruptcy Court, all objections to Claims shall be served and filed no later than one hundred twenty (120) days after the Effective Date.

Notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, from and after the Effective Date, all Claims and all Causes of Action that the Plan Administrator has asserted against other parties may be compromised and settled according to the following procedures:

(1)     The following settlements or compromises do not require the review or approval of the Bankruptcy Court or any other party in interest.

    (i)      The settlement or compromise by the Plan Administrator of a Claim pursuant to which such Claim is Allowed in an amount of $15,000 or less;

    (ii)     The settlement or compromise of a Claim where the difference between the amount of the Claim listed on the Schedules and the amount of the Claim proposed to be allowed under the settlement is $15,000 or less; and

    (iii)    The settlement or compromise of a claim or Cause of Action asserted by the Plan Administrator against a party where the difference between the amounts sought to be recovered by the Plan Administrator and the amount to be paid to the Plan Administrator under the proposed settlement is $15,000 or less.

(2)     The following settlements or compromises shall be submitted to the Bankruptcy Court for approval:

    (i)      Any settlement or compromise of Administrative Expenses under §§ 330 and 331 of the Bankruptcy Code; and

(ii)     Any settlement, compromise, sale, or assignment of a Claim or a claim or Cause of Action asserted by the Plan Administrator that involves an "insider," as defined in § 101(31) of the Bankruptcy Code.

Notices of any settlements requiring Bankruptcy Court approval shall be sent to those creditors and other parties in interest appearing on the Rule 2002 list maintained by the Bankruptcy Court.

A Distribution shall only be made to the holder of a Disputed Claim, when, and to the extent that, such Disputed Claim becomes Allowed.  No interest shall be paid on account of Disputed Claims that later becomes Allowed. No Distribution shall be made with respect to all or any portion of any Disputed Claim pending the entire resolution thereof.  To the extent a Claim is Allowed after the Initial Distribution Date or any subsequent Distribution Dates, the Plan Administrator shall pay to such Claim holder a "catch up" payment of the Claim holder's Pro Rata share that would have been paid but for the disputed nature of the Claim.

## C.     Injunction

As of the Confirmation Date, except as otherwise provided in the Amended Plan or the Confirmation Order, all Persons that have held, currently hold or may hold a Claim, Equity Interest or other debt or liability that is treated pursuant to the terms of the Plan are enjoined from taking any of the following actions on account of any such Claims, Equity Interests, debts or liabilities, other than actions brought to enforce any rights or obligations under the Plan, against the Debtor, the Debtor's Estate, the Plan Administrator, or Property of the Estate: (i) commencing or continuing in any manner any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff or right of recoupment of any kind against any debt, liability or obligation; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.  This injunction shall remain in full force and effect until final distributions to Creditors are made under this Amended Plan.

## VII.    CONFIRMATION AND CONSUMMATION PROCEDURE

At the Confirmation Hearing, the Bankruptcy Court will confirm the Amended Plan only if all of the requirements of § 1129 of the Bankruptcy Code are met.  Among the requirements for confirmation of a plan are that the plan is (i) accepted by all impaired classes of claims and equity interests or, if rejected by an impaired class, that the plan "does not discriminate unfairly" and is "fair and equitable" as to such class, (ii) feasible, and (iii) in the "best interests" of creditors and stockholders that are impaired under the plan.

### 1.     Impairment

Under § 1124 of the Bankruptcy Code, a class of claims or interests is "impaired" under a plan of reorganization unless, with respect to each claim or interest of such class, the Amended Plan:

(1)     leaves unaltered the legal, equitable, and contractual rights of the holder of such claim or interest; or

(2)    notwithstanding any contractual provision or applicable law that entitles the holder of a claim or interest to receive accelerated payment of such claim or interest after the occurrence of a default:

(a)    cures any such default that occurred before or after the commencement of the case under the Bankruptcy Code, other than a default of a kind specified in § 365(b)(2) of the  Bankruptcy Code;

(b)    reinstates the maturity of such claim or interest for damages incurred as a result of reasonable reliance on such contractual provision or applicable law;

(c)    compensates the holder of such claim or interest for damages incurred as a result of reasonable reliance on such contractual provision or applicable law; and

(d)    does not otherwise alter the legal, equitable, or contractual rights to which such claim or equity interest entitles the holder of such claims or interest.

## 2.    Unfair Discrimination and Fair and Equitable Tests

To obtain confirmation of the Plan, the Chapter 11 Trustee must demonstrate to the Bankruptcy Court that the Amended Plan "does not discriminate unfairly" and is "fair and equitable" with respect to each impaired, non-accepting class.  To be "fair and equitable," the Bankruptcy Code requires that the plan provide the following treatment for unsecured creditors and equity holders:

- Unsecured Creditors.    Either (i) each impaired unsecured creditor receives or retains under the plan property of a value equal to the amount of its allowed claim, or (ii) the holders of claims and interests that are junior to the claims of the dissenting class will not receive any property under the plan.

- Equity Interests.    Either (i) each holder of an equity interest will receive or retain under the plan property of a value equal to the greatest of the fixed liquidation preference to which such holder is entitled, the fixed redemption price to which such holder is entitled or the value of the interest, or (ii) the holder of an interest that is junior to the non-accepting class will not receive or retain any property under the plan.

A plan of liquidation does not "discriminate unfairly" with respect to a non-accepting class if the value of the cash and/or securities to be distributed to the non-accepting class is equal to, or otherwise fair when compared to, the value of the distributions to other classes whose legal rights are the same as those of the non-accepting class.

The Chapter 11 Trustee believes and will demonstrate at the Confirmation Hearing that the Amended Plan "does not discriminate unfairly" and is "fair and equitable" with respect to each impaired, non-accepting class.

## 3.    Feasibility

The Bankruptcy Code requires that confirmation of a plan is not likely to be followed by liquidation or the need for further financial reorganization.  Since liquidation is proposed in the Amended Plan and no further financial reorganization of the Debtor will be possible, the Chapter

11 Trustee  believes that the Amended Plan meets the feasibility requirements.  In addition, the Chapter 11 Trustee believes that sufficient funds will exist at confirmation, or in a reasonable time period thereafter, to make all payments required by the Amended Plan.

### 4.    Best Interests Test

With respect to each impaired Class of Claims and Equity Interests, confirmation of the Amended Plan requires that each holder of a Claim or Equity Interest either (i) accepts the Plan, or (ii) receives or retains under the Amended Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code.  This requirement is referred to as the "best interests test."

The Chapter 11 Trustee has agreed to serve as the Plan Administrator.  The Chapter 11 Trustee has served as Trustee in the case since roughly August 1, 2009.  The Chapter 11 Trustee believes that the his appointment as Plan Administrator will lead to an efficient and effective liquidation of the remaining Assets, will lead to Distributions being made more quickly than if the case was converted to Chapter 7, and will incur less fees and costs liquidating the Assets and making Distributions than would a Chapter 7 Trustee. The Chapter 11 Trustee/Plan Administrator will continue to pay the United States Trustee fees until the case is dismissed, converted or closed and will provide the quarterly disbursement reports to the Office of the United States Trustee.

The Chapter 11 Trustee believes that the Amended Plan will yield to holders of Claims and Equity Interests an amount at least equal to what would be available for their respective Claims and Interests in a Chapter 7 liquidation.  Holders of Class 3 Claims will enjoy a greater recovery due to avoiding under the Amended Plan the increased cost and expenses of a Chapter 7 liquidation associated with fees payable to a Chapter 7 trustee and its professionals.  Holders of Administrative or Priority Claims have no assurance of being paid in a Chapter 7 liquidation, and such distributions likely would be delayed in a Chapter 7, while the Amended Plan provides for the full payment of administrative claims and Priority Claims in cash upon allowance and liquidation.  As a result of these factors, the Chapter 11 Trustee believes that the Amended Plan provides a superior recovery for holders of Claims.  The Chapter 11 Trustee also believes that the value of any distributions to each class of Allowed Claims in a Chapter 7 case would be less than the value of distributions under the Amended Plan because such distributions in a Chapter 7 case would not occur for a substantial period of time.

It is likely that distribution of the proceeds of the liquidation could be substantially delayed in order to resolve claims and prepare for distributions.  In the likely event litigation was necessary to resolve claims asserted in the Chapter 7 case, the delay could be prolonged.

## VIII.  RISKS ASSOCIATED WITH PLAN

Holders of Claims against the Debtor should read and consider carefully the factors set forth below, as well as the other information set forth in this Amended Disclosure Statement (and the documents delivered together herewith and/or incorporated by reference), prior to voting to accept or reject the Amended Plan.  These risk factors should not, however, be regarded as constituting the only risks involved in connection with the Amended Plan and its implementation.

1.    Distribution under theAmended Plan to holders of Claims 3 Claims depends in part upon the ability of the Plan Administrator to realize upon the value of the assets and the results of objecting to claims and, if appropriate, pursuing adversary proceedings.

2.      <u>Failure to Obtain Cram-Down</u>.  The Chapter 11 Trustee intends to seek confirmation of the Amended Plan pursuant to the cram down provisions of § 1129(b) of the Bankruptcy Code.  If this is unsuccessful, the likely results will be a conversion of the Chapter 11 case to Chapter 7 of the Bankruptcy Code.

3.      <u>Risk of Non-Occurrence of the Effective Date</u>.  Although the Chapter 11 Trustee believes that the Effective Date should promptly occur following the entry of the Confirmation Order, there can be no assurance as to that timing or that each of the conditions to the Effective Date will occur.

4.      <u>Risk of Default Under The Amended Plan Terms</u>. A default, that is, a failure to adhere to the  terms of the Amended Plan, will trigger conversion of the case to a Chapter 7 proceeding and appointment of a Chapter 7 Trustee. The Chapter 11 Trustee believes that the risk of a default is minimal, since the sale of the Properties was closed.

## IX.   FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

In general, the Chapter 11 Trustee does not expect to incur any substantial tax liability as a result of implementation of the Amended Plan.  The Debtor's tax attributes, such as Net Operating Losses, credits and its basis in property, however, may be reduced after confirmation as a result of provisions of the Tax Code governing Cancellation of Indebtedness provided under the plan.  Cancellation of Indebtedness is generally defined as the amount by which the amount discharged or forgiven under a plan exceeds the value of distributions or other consideration exchanged.  In this case, for instance, the amount of Cancellation of Indebtedness income will depend on the amount paid to creditors.  It is possible that other factors may effect the utilization of tax attributes after confirmation.

A holder of a Claim who receives Cash or other consideration in satisfaction thereof may recognize ordinary income or loss to the extent that any portion of such consideration is characterized as accrued interest.  A holder of a Claim who was not previously required to include as income accrued but unpaid interest attributable to its Claim, and who surrenders its Claim pursuant to the Amended Plan, will be treated as having received interest income to the extent that any consideration received is characterized for federal income tax purposes as interest regardless of whether the holder of the Claim realizes an overall gain or loss as a result of surrendering its Claim.  A holder of a Claim who previously included as income accrued but unpaid interest attributable to its Claim should recognize an ordinary loss to the extent that such accrued but unpaid interest is not satisfied in full.  The manner in which consideration is to be allocated between accrued interest and principal for these purposes is unclear under present law.

A holder of a Claim may realize income, gain or loss by reason of receiving consideration attributable to the principal of any Claim surrendered equal to the difference between the holder's adjusted basis in its Claim and the amount of consideration which is not allocable to accrued but unpaid interest.  The character of such income, gain or loss as capital gain or loss, or ordinary income or loss, will be determined by whether the holder's Claim constitutes a capital asset to the holder.  Generally a holder of these Claims will recognize gain or loss equal to the difference between (1) the amount of Cash and the fair market value of other property received (less the portion thereof attributable to accrued interest), and (2) the basis the holder has in such Claim.

HOLDERS OF CLAIMS SHOULD CONSULT THEIR OWN TAX ADVISORS ABOUT THE PROPER ALLOCATION OF CONSIDERATION BETWEEN PRINCIPAL AND INTEREST.  AS IS APPARENT FROM THE FOREGOING DISCUSSION, THE TAX

CONSEQUENCES OF THE PLAN FOR THE DEBTOR, HOLDERS OF CLAIMS AND HOLDERS OF EQUITY INTERESTS INVOLVE A NUMBER OF ISSUES AS TO WHICH THE LAW IS HIGHLY UNCERTAIN.  MOREOVER, THE FOREGOING DISCUSSION IS ONLY A BRIEF SUMMARY OF CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN.  WITH THESE CONSIDERATIONS IN MIND, HOLDERS OF CLAIMS AND HOLDERS OF EQUITY INTEREST ARE AGAIN STRONGLY URGED TO CONSULT THEIR OWN TAX ADVISORS REGARDING THE SPECIFIC CONSEQUENCES TO THEM OF THE AMENDED PLAN UNDER FEDERAL AND APPLICABLE STATE, LOCAL AND FOREIGN TAX LAWS.

## X.  ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

If no chapter 11 plan can be confirmed, the Chapter 11 Case may be converted to a case under Chapter 7 of the Bankruptcy Code in which a trustee would be elected or appointed to liquidate the assets of the Debtor.  A discussion of the effect that a Chapter 7 liquidation would have on the recoveries of holders of Claims is set forth in Section VII of the Disclosure Statement.  For the reasons described above, the Chapter 11 Trustee believes that liquidation under Chapter 7 would result in creditors realizing less than they could potentially realize under the Amended Plan.

## XI.   CONCLUSION AND RECOMMENDATION

The Chapter 11 Trustee believes that confirmation and implementation of the Amended Plan is preferable to the alternative described above because it will provide the greatest recoveries to holders of Claims.  The Chapter 11 Trustee urges holders of impaired Claims entitled to vote on the Amended Plan to accept the Amended Plan and to evidence such acceptance by timely returning their Ballots in accordance with the procedures established by the Bankruptcy Court.


Dated:  September 20, 2011
        Alexandria, Virginia


By:     */s/ John McGinley Jr.*
        John F. McGinley Jr., Esq.
        McGinley, Elsberg & Hutcheson, P.L.C.
        627 S. Washington Street
        Alexandria, VA 22314
        Phone: 571.970.5426
        Fax:    571.970.6333
        jmacjrlaw@aol.com
        Chapter 11 Trustee